IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

LEEANDRA L. MARTIN                                                                          PLAINTIFF

        v.               Civil No. 2:12-cv-02078-JRM

CAROLYN W. COLVIN, Commissioner of
Social Security Administration[1]                                                           DEFENDANT

## MEMORANDUM OPINION

**I.**     **Factual and Procedural Background**

       Plaintiff, Leeandra L. Martin, brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act").

       Plaintiff protectively filed her application on February 3, 2009, alleging a disability onset date of June 2, 2006, due to obesity, degenerative disc disease of the lumbar and cervical spine, migraines, obstructive sleep apnea, asthma, pitting edema, anxiety, depression, pain disorder, personality disorder, post-traumatic stress disorder ("PTSD"), and bipolar disorder. Tr. 10, 12, 15-16, 85. On the alleged onset date, Plaintiff was thirty-one years old with a high school education. Tr. 20.

       Plaintiff's applications were denied at the initial and reconsideration levels. Tr. 27. At Plaintiff's request, an administrative hearing was held on March 12, 2010. Tr. 511-545. Plaintiff

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

was present at this hearing and represented by counsel. On April 16, 2010, the ALJ rendered an unfavorable decision, finding Plaintiff not disabled under the Act. Tr. 24-35. Thereafter, Plaintiff appealed the ALJ's unfavorable decision to the Appeals Council. Tr. 23. On August 10, 2010, the Appeals Council remanded the case back to the ALJ for further development of the record. Tr. 22A-22C.

After further developing the record and holding an additional hearing on November 30, 2010, the ALJ issued a new opinion on January 11, 2011, finding Plaintiff was not disabled within the meaning of the Act. Tr. 7-22, 492-510. Subsequently, the Appeals Council denied Plaintiff's Request for Review on February 15, 2012, thus making the ALJ's decision the final decision of the Commissioner. Tr. 3A-5. Plaintiff now seeks judicial review of that decision.

## II. Applicable Law

The Court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)). In determining whether evidence is substantial, the Court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be eligible for disability insurance benefits, a claimant has the burden of establishing that she is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment that has lasted, or can be expected to last, for no less than twelve months. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits her physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the regulations; (4) whether the claimant has the RFC to perform her past relevant work; and (5) if the claimant cannot perform her past work, the burden of production then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform given her age, education, and work experience. *Pearsall*, 274 F.3d at 1217; 20 C.F.R. § 404.1520(a), 416.920(a). If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is deemed not disabled. *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

### III. ALJ's Determination

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity at any point since June 2, 2006, her alleged onset date, through December 31, 2010, her date last insured. Tr. 12. At step two, the ALJ found Plaintiff suffers from the following severe impairments: obesity, degenerative disc disease of the lumbar and cervical spine, asthma, and adjustment disorder with mixed disturbance of emotions and conduct. Tr. 12-13. At step three, he determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed

impairment. Tr. 13-15.

At step four, the ALJ found Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except she could only occasionally climb, balance, crawl, kneel, stoop, and crouch, and must avoid concentrated exposure to dusts, odors, gases, and pulmonary irritants. Tr. 15-20. Mentally, the ALJ found Plaintiff limited to work in which interpersonal contact is incidental to the work performed, the complexity of tasks is learned and performed by rote, with few variables and little judgment required, and the supervision required is simple, direct, and concrete. Tr. 15-20.

With these limitations, the ALJ found Plaintiff could not perform any of her past relevant work. Tr. 20. However, after consulting a vocational expert, the ALJ found jobs existing in significant numbers in the national economy that Plaintiff could perform.[2] Accordingly, the ALJ determined Plaintiff was not under a disability from June 2, 2006, the alleged onset date, through December 31, 2010, the date last insured. Tr. 21-22.

**IV.    Discussion**

Plaintiff contends the ALJ erred by: (A) failing to properly consider her mental impairments; (B) failing to consider her impairments in combination; and (C) improperly determining her RFC. *See* Pl.'s Br. 2-10. The Commissioner responds that substantial evidence supports the ALJ's determination. *See* Def.'s Br. 5-15. For the following reasons, the court finds that substantial evidence does not support the ALJ's decision.

---

[2] The ALJ determined Plaintiff could perform the requirements of representative sedentary, unskilled occupations such as production assembly workers, of which there are 1,393 jobs in Arkansas and 92,167 jobs nationally, addressing clerk, of which there are 142 jobs in Arkansas and 24,551 jobs nationally, and escort vehicle driver, of which there are 664 jobs in Arkansas and 70,305 jobs nationally. Tr. 21, 174.

Plaintiff contends that the ALJ did not properly consider and account for her mental impairments, specifically her diagnoses of anxiety and personality disorder. *See* Pl.'s Br. 2-6. Step two of the regulations involves a determination, based on the medical evidence, whether the claimant has an impairment or combination of impairments that is severe. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A severe impairment is one which significantly limits a claimant's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have "no more than a minimal impact on her ability to work." *Caviness v. Massanari,* 250 F.3d 603, 605 (8th Cir.2001), *citing Nguyen v. Chater,* 75 F.3d 429, 430-31 (8th Cir.1996). Although the Plaintiff has the burden of establishing a severe impairment or impairments, the burden at this stage is not great. *Caviness*, 250 F.3d at 605.

In July 2006, Plaintiff was treated at St. Edward Mercy Medical Center for anxiety attacks. Tr. 382-383. Rezina Shahid Ahmed, M.D., spoke to Plaintiff about changing her medications through her primary care physician. Tr. 383. Dr. Ahmed discharged Plaintiff with a prescription for Ambien to help her sleep. Tr. 383. In November 2006, Plaintiff was transported to St. Edward's for treatment of extreme anxiety, insomnia, and stress following her husband's deployment. Tr. 369-376. Plaintiff was diagnosed with acute anxiety and stress reaction, given a prescription for Xanax, and discharged in stable condition. Tr. 375.

Plaintiff also attended three therapy sessions at Clinical Psychology of Fort Smith in January 2008. Tr. 325-326. She was diagnosed with generalized anxiety disorder, rule out bipolar disorder, and her Global Assessment of Functioning ("GAF") was estimated at 35. Tr. 325.

On September 28, 2010, at the Agency's request, Plaintiff underwent a mental diagnostic evaluation with Kathleen Kralik, Ph.D. Tr. 393-401. Dr. Kralik diagnosed Plaintiff with pain disorder associated with both psychological factors and a general medical condition, adjustment disorder with mixed disturbance of emotions and conduct, and personality disorder not otherwise specified (with narcissistic, borderline, antisocial, parasitic-dependent, and passive-aggressive personality features), which Dr. Kralik noted was the primary diagnosis impacting occupational functionality. Tr. 399. Dr. Kralik estimated Plaintiff's GAF score at 35-45, and noted that malingering/exaggeration was likely. Tr. 399.

Dr. Kralik found Plaintiff moderately impaired in the ability to carry out activities of daily living, although she noted that Plaintiff was likely more disinclined than truly unable to function adequately in this area. Tr. 399. Additionally, she found Plaintiff's ability to communicate and interact in a socially adequate, intelligible, and effective manner, attend and sustain concentration, and sustain persistence in completing tasks to be adequate for occupational purposes, although she noted that Plaintiff's ability to sustain persistence was likely problematic for tasks she did not like. Tr. 399-400. Dr. Kralik found Plaintiff's capacity to cope with the typical mental/cognitive demands of basic work-like tasks to be mildly to moderately impaired for occupational purposes. Tr. 400. She further found Plaintiff's ability to complete work-like tasks within an acceptable time frame to be mildly impaired for occupational purposes. Tr. 400. Dr. Kralik opined that even if all of Plaintiff's allegations were taken at face value, such issues would not seem to be of a nature or severity such as to preclude all forms of gainful occupational endeavors relative to her intellect and skill set. Tr. 400.

The ALJ attributed great weight to Dr. Kralik's opinion. Tr. 18-19. After reviewing the evidence of record, the ALJ found Plaintiff's anxiety to be non-severe, noting that although Plaintiff was diagnosed with generalized anxiety disorder, there were no significant abnormalities noted in her mental status findings. Tr. 18. Moreover, while Plaintiff was originally diagnosed with anxiety at St. Edward's and Clinical Psychology of Fort Smith, Dr. Kralik noted that Plaintiff's symptoms suggested "an adjustment disorder rather than any more pervasive mood or anxiety disorder." Tr. 399.

Relying on Dr. Kralik's report, the ALJ found adjustment disorder with mixed disturbance of emotions and conduct to be severe at step two of the disability analysis; however, he did not find Plaintiff's personality disorder to be severe. The Commissioner submits that the ALJ's omission was harmless error. *See* Def.'s Br. 6.

The Eighth Circuit considered the effect of an error at step two in *Nicola v. Astrue,* 480 F.3d 885 (8th Cir. 2007). In *Nicola*, the claimant carried a diagnosis of borderline intellectual functioning, but the ALJ did not consider it to be a severe impairment at step two of the sequential analysis. *Id.* at 887. The Eighth Circuit considered whether this error was harmless, but, citing *Hunt v. Massanari,* 250 F.3d 622, 625-626 (8th Cir. 2001), held that a diagnosis of borderline intellectual functioning must be considered a severe impairment when sufficient medical evidence supports the diagnosis. *Id.* Accordingly, the court reversed and remanded the case, rejecting the Commissioner's argument of harmless error. *Id.*

Many courts are split on the issue of whether an error at step two of the sequential analysis requires automatic reversal in light of *Nicola*. Some district courts have construed *Nicola* narrowly, interpreting its holding to apply only to borderline intellectual functioning cases. *See Johnson v.*

*Comm'r of Soc. Sec.,* 2012 WL 4328413, *21 (D. Minn. July 11, 2012) (*Nicola* does not establish a rule of *per se* reversibility regarding an ALJ's error at step two); *Lorence v. Astrue,* 691 F. Supp. 2d 1008, 1028 (D. Minn. 2010) (error at step two was not by itself reversible error where the ALJ continued with the evaluation in determining the claimant's RFC). Other courts have interpreted the rule broadly, applying its holding to all impairments. *Moraine v. Soc. Sec. Admin.,* 695 F. Supp. 2d 925, 956 (D. Minn. 2010) ("we are convinced that the ALJ's failure to conduct a proper evaluation at Step Two, by itself, warrants a remand"); *Stewart v. Astrue,* 2011 WL 338794, *5 (W.D Mo. Jan. 31, 2011) ("the law is clear in the Eighth Circuit that if the ALJ errs in finding that a severe impairment is not severe, the disability determination must be reversed and remanded.").

While the undersigned is not convinced that *Nicola* requires automatic reversal, this case is nevertheless remanded for further consideration of Plaintiff's mental impairments. Given the extent of the ALJ's reliance on Dr. Kralik's findings and Dr. Kralik's notation that Plaintiff's personality disorder was the primary diagnosis impacting occupational functionality, the ALJ should have discussed his findings with respect to Plaintiff's personality disorder in more detail. Notably, the ALJ's opinion stated that Dr. Kralik diagnosed Plaintiff with PTSD with narcissistic, borderline, antisocial, parasitic-dependent, and passive aggressive personality features, when in fact she was diagnosed with personality disorder not otherwise specified, with narcissistic, borderline, antisocial, parasitic-dependent, and passive aggressive personality features. While this is a minor error standing alone, when combined with the omission at step two, it leaves a legitimate question as to how much consideration Plaintiff's personality disorder was actually given. For these reasons, this case is remanded for further development of Plaintiff's mental impairments. On remand, the ALJ should specifically consider the severity of Plaintiff's personality disorder and its impact on her overall

functioning at each step of the disability evaluation process.

## V. Conclusion

Accordingly, the undersigned concludes that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS SO ORDERED this 27th day of June 2013.

/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE